# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

## (Southern Division)

| | |
|---|---|
| CHENNETTA BLACKNELL<br>5406 Auth Rd. Apt 526<br>Camp Springs, MD 20746<br><br>and<br><br>RAY DIGGS<br>5406 Auth Rd. Apt 526<br>Camp Springs, MD 20746<br><br>       Plaintiffs,<br><br>v.<br><br>HUNTER WARFIELD, INC.<br>7600 Wisconsin Ave. #700<br>Bethesda, MD 20814<br>     **Serve on**:<br>     CSC-Lawyers Incorporating Service Company<br>     7 St. Paul Street Suite 820<br>     Baltimore, MD 21202<br><br>and<br><br>SAGE VENTURES, LLC<br>1777 Reisterstown Rd. Suite 245<br>Baltimore, MD 21208<br>     **Serve on**:<br>     Gordon Horwitz<br>     1777 Reisterstown Rd. Suite 245<br>     Baltimore, MD 21208<br><br>and<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.<br>505 City Parkway West<br>Orange County, CA 92668<br>     **Serve on**:<br>     The Corporation Trust Incorporated<br>     2405 York Rd., Suite 201<br>     Lutherville Timonium, MD 21093 | Case No.: _____ |

1

and

EQUIFAX INFORMATION SERVICES, LLC
1550 Peachtree Street, NW
Atlanta, GA 30309
  **Serve on**:
  CSC-Lawyers Incorporating Service Company
  7 St. Paul Street, Suite 820
  Baltimore MD 21202

and

TRANSUNION LLC
1013 Centre Road,
Wilmington DE 19805
  **Serve on**:
  Csc-Lawyers Incorporating Service Company
  7 St. Paul Street
  Suite 820
  Baltimore MD 21202

     Defendants.

---

## COMPLAINT AND DEMAND FOR A JURY TRIAL

COMES NOW Plaintiffs, Chennetta Blacknell and Ray Diggs, by and through undersigned counsel, Ingmar Goldson, Esq. and The Goldson Law Office and Joseph S. Mack, of the Law Offices of Joseph S. Mack, and files this Complaint against Defendants, Hunter Warfield, Inc. ("Hunter Warfield"), Sage Ventures, LLC ("Sage"), TransUnion LLC ("TransUnion"), Experian Information Solutions, Inc. ("Experian"), and Equifax Information Services, LLC ("Equifax"), and in support hereof states as follows:

### INTRODUCTION

Plaintiffs bring this action to seek redress for the defendants' unfair and deceptive business practices, which have left them harmed with a tarnished financial reputation. In short, Defendants Hunter Warfield and Sage are making false statements about the Plaintiffs' finances;

2

stating that they owe money to Sage that Plaintiffs do not owe.  Defendant Hunter Warfield reported this debt to Defendants TransUnion, Experian and Equifax (the "CRAs"), who in turn report the false debt to others. Plaintiffs disputed this fraudulent reporting, triggering a requirement under the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. §§ 1681 *et. seq.*, for the CRAs and Hunter Warfield to conduct reasonable investigations, which they failed to do. Instead, they left the derogatory information on Plaintiffs' credit report to damage their credit and financial reputation.  This lawsuit follows as Plaintiffs' only avenue to remove this clearly false information from their credit reports and stop their ongoing damages.

## PARTIES

1.     Plaintiff Chennetta Blacknell is a natural person and resident of Prince George's County, Maryland, and is a "consumer" within the meaning of the Maryland Consumer Protection Act.

2.     Plaintiff Ray Diggs is a natural person and resident of Prince George's County, Maryland, and is a "consumer" within the meaning of the Maryland Consumer Protection Act.

3.     Defendant Sage is a Maryland limited liability company that owns and operates the Midtown at Camp Springs Apartment Complex.

4.     Defendant Hunter Warfield is a Maryland corporation that is a furnisher as defined in the FCRA.

5.     Defendant Experian is an Ohio corporation registered to do business in Maryland. Its principal office is 505 City Parkway West, Orange, CA 92668. Its registered agent in Maryland is The Corporation Trust, Incorporated, 2405 York Road, Suite 201, Lutherville, Timonium, MD 21093-2264.

6.     Defendant Experian is a consumer reporting agency under 15 U.S.C. §1681a(f).

3

7.      Defendant Equifax is a Georgia Limited Liability Company registered to do business in Maryland. Its principal office is 1550 Peachtree St. NW, Atlanta, GA 30309. Its registered Agent in Maryland is CSC-Lawyers Incorporating Service Company, 7 St. Paul St. Suite 820, Baltimore, MD 21202.

8.      Defendant Equifax is a consumer reporting agency 15 U.S.C. §1681a(f).

9.      Defendant TransUnion is a Delaware Limited Liability Company. It is registered to do business in Maryland, but forfeited its registration in 2016 for failure to file its 2016 property return. Its principal office is 1013 Center Road, Wilmington DE 19805. Its registered agent in Maryland is CSC-Lawyers Incorporating Service Company, 7 St. Paul St. Suite 820, Baltimore, MD 21202.

10.     Defendant TransUnion is a consumer reporting agency 15 U.S.C. §1681a(f).

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this matter because the operative events in this Complaint took place in Prince George's County and the Defendants regularly transact business in Maryland.

12.     Plaintiffs bring claims against Defendants pursuant to the FCRA.  Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. § 1343 and 28 U.S.C. § 1367 (Supplemental Jurisdiction).

13.     Venue is proper in this District under 28 U.S.C. § 1391(b).

## STATEMENTS OF FACT

14.     Plaintiffs rented 4301 Midtown Square, Apartment 1029, Camp Springs, MD 20746 (the "Property") pursuant to a one-year lease (the "Lease") between Plaintiffs and Defendant Sage commencing on July 30, 2018 and ending July 29, 2019.

15.     Pursuant to the Lease, Plaintiffs paid a security deposit bond fee of $175.00.

16.     Despite paying $2,415 a month for the Property, Plaintiffs had a terrible experience, including aggressive neighbors engaging in criminal behavior and trash and broken glass in the hallway in front of Plaintiffs' apartment. The Plaintiffs also had to suffer the presence of dangerous dogs who were being illegally kept by neighbors, with knowledge by Sage.

17.     Plaintiffs raised their concerns with Candice Davis, Defendant Sage's property manager, and ultimately mutually agreed with Ms. Davis to move up the end of the lease to July 22, 2019.  On June 26, 2019, Ms. Davis confirmed this agreement, writing to Plaintiffs "Please consider this email your approval for the termination of your lease a week early."

18.     On July 22, 2019, Ms. Davis wrote to Plaintiffs summarizing the pro-rated rent due up to July 22, 2019 and other pro-rated charges including charges for utilities, stating that the "grand total owed is $1,875.74."

19.     Plaintiffs paid Defendant Sage that requested amount by check the same day and moved out, turning in their keys, leaving the Property in good condition and otherwise doing everything requested of them by Defendant Sage.

20.     On September 19, 2019, Plaintiff Chennetta Blacknell emailed Defendant Sage to inquire about the return of a security deposit, and at that time, Defendant Sage told Plaintiff Blacknell that a balance of $269.15 remained due on Plaintiffs' account. This was a surprise to

the Plaintiffs because they paid the exact amount that they were told to pay to vacate, and that amount was represented to them to include utilities. Nevertheless, after noting that $269.15 was "extraordinarily high" compared to their other utilities payments, Plaintiff Blacknell simply requested the utilities bill so that she could make the payment and resolve the issue.  Defendant Sage never informed Plaintiffs of any purported damages to the Property or any other issues.

21.     Despite Plaintiffs' request for the utilities bill, Plaintiffs never received any more bills or invoices from Defendant Sage or any other entity relating to utilities on the Lease.

22.     Defendant Sage hired Defendant Hunter Warfield to pursue Plaintiffs for a claimed balance of $866.31 that kept growing. This caused further confusion to the Plaintiffs because $866 is far more than the $269.15 that was purported to be utilities, and Plaintiffs paid what Defendant Sage asked of months prior.

23.     Plaintiffs forwarded their email correspondence with Ms. Davis confirming their agreement with Defendant Sage to terminate the lease a week early and prorate the rent and fees, but Defendants Sage and Hunter Warfield continued to pursue them for the claimed balance. Defendant Hunter Warfield never informed the Plaintiffs what the balance was actually for.

24.     Defendants Hunter Warfield, Experian, Equifax, and TransUnion began reporting a delinquent collection account on the Plaintiffs' credit reports. The trade line states that Defendant Hunter Warfield is the furnisher and Defendant Sage is the creditor for the account. The trade line first stated that the Plaintiffs owed a delinquent amount of approximately $875 to Defendant Sage, but that amount increases every month, causing further confusion because whatever the purported debt is, it keeps growing.

25.     After Plaintiffs saw the delinquent trade line stating that they owed a purported debt that they do not owe, they were appalled. Not only did the Plaintiffs have to suffer poor

conditions at the Property and did everything that was asked of them by Defendant Sage, but now they also had to suffer Defendants falsely and publicly saying that they are not paying their bills.

26.     On April 13, 2021, each Plaintiff sent letters to each of the Defendant CRAs disputing the trade line. The dispute letters stated:

> There is a "Hunter Warfield" collections account on my credit report stating that I owe a past due amount of $909. I do not owe the $909, and that trade line must be deleted immediately.  The trade line seems to stem from my ex-landlord sending an account to collections. Upon investigation of my dispute, you will find that there is absolutely no basis for this collections account.   Attached to this dispute letter are 2 documents: 1) an email chain proving exactly how much I needed to pay to move out from the apartment and 2) a check showing that I paid that exact amount.   In case my ex-landlord (Sage Ventures) says there was damage to the property, that is not true, and in any case we paid a $175 surety bond that would have covered those expenses anyway.   Please remove the Hunter Warfield trade line immediately.

27.     In accordance with their duty under the FCRA, each of the Defendant CRAs sent Plaintiffs' April 13, 2021 dispute letter to the furnisher, Defendant Hunter Warfield.

28.     Defendant Hunter Warfield and Defendant CRAs failed to conduct reasonable investigations upon the Plaintiffs' April 13, 2021 dispute letters. As a result of the failure to conduct a reasonable investigation, the trade line was not removed and Defendant Hunter Warfield and Defendant CRAs continue to report a false delinquent debt.  That false reporting continues to place Plaintiffs' reputation in a false light because others have access to the false information.

29.     After Plaintiffs experienced the decline in their credit standing and realized Defendant Hunter Warfield and Defendant CRAs were going to continue to report the false derogatory information about her even after they disputed the trade line, Plaintiffs experienced bouts of emotional distress that included anxiety, frustration, loss of sleep and other physical

manifestations. Ms. Blacknell experienced weight gain from the stress caused by the Defendants actions and inactions, and Mr. Diggs, who was worried about his security clearance being affected by the false credit reporting, grew aggravated in conversations and began grinding his teeth in his sleep.

30.     Since Plaintiffs saw that their credit report had a false and inaccurate delinquency on it, they refrained from applying for credit which they otherwise would have applied for but for the false delinquency. Mr. Digs is currently trying to obtain a home loan and cannot qualify for loans for which he would otherwise qualify because of the false credit reporting.

31.     Plaintiffs did apply for credit after they sent dispute letters. Plaintiffs received credit denials where they otherwise would have been granted credit.

32.     Plaintiffs were left with no other recourse than to file the instant lawsuit.

### COUNT ONE  – Violation of the Maryland Consumer Debt Collection Act
### (Against Sage and Hunter Warfield)

33.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

34.     The Maryland Consumer Debt Collection Act, MD. CODE ANN., COM. LAW § 14-201 *et seq.* (the "MCDCA"), prohibits "collecting or attempting to collect an alleged debt" by "[c]laim, attempt, or threat[] to enforce a right with knowledge that the right does not exist."  MD. CODE ANN., COM. LAW § 14-202(8).

35.     The MCDCA also prohibits companies like Defendant Sage from disclosing or threatening to disclose "information which affects the debtor's reputation for credit worthiness with knowledge that the information is false." MD. CODE ANN., COM. LAW § 14-202(3).

36.     The MCDCA also prohibits any conduct that violates the FDCPA. MD. CODE ANN., COM. LAW § 14-202(11). By pursuing the false debt, despite the Plaintiffs showing clear proof that

they paid exactly what was asked of them upon an agreed early move-out, both Sage and Hunter Warfield engaged in conduct that violate 15 USCA § 1692e and 1692f.

37.     Defendants Sage and Hunter Warfield claimed certain sums due from Plaintiffs that they knew were not due based on the e-mail correspondence between Plaintiffs and Ms. Davis on behalf of Defendant Sage that Plaintiffs provided to Defendants Sage and Hunter Warfield. At all times relevant to the Complaint, there was no basis whatsoever for Defendants Sage and Hunter Warfield to attempt to collect any debt from Plaintiffs. Further, Defendant Sage disclosed information which affects Plaintiffs' reputation for credit worthiness with knowledge that the information is false.

38.     By attempting to collect debt while Plaintiffs clearly did not owe the money they were attempting to collect, Defendants Sage and Hunter Warfield violated the MCDCA by claiming, attempting, and threatening rights with knowledge that the rights did not exist.

39.     As a direct and proximate result of the defendants' actions, Plaintiffs suffered actual damages including emotional distress with physical manifestations.

### COUNT TWO – Violation of the Maryland Consumer Protection Act
### (Against Sage and Hunter Warfield)

40.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

41.     The debt collecting and reporting activities in which Defendants Sage and Hunter Warfield engaged, as set forth herein, are governed by the Consumer Protection Act, MD. CODE ANN., COM. LAW § 13-101, *et seq.*

42.     Section 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts. The collection of rent and purported rent deficiencies by Sage directly and indirectly through its authorized agents and employees involves the collection of debts.

9

43.     A violation of the MCDCA is also a violation of the Maryland Consumer

Protection Act. MD. CODE ANN., COM. LAW § 13-301(14)(iii).

44.     As a direct and proximate result of the actions of Defendants Sage and Hunter

Warfield, Plaintiffs suffered actual damages including emotional distress with physical

manifestations.

### COUNT THREE – Violation of the Fair Credit Reporting Act – Failure to Investigate (Defendant Hunter Warfield Only)

45.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

46.     The FCRA requires that a furnisher such as Defendant Hunter Warfield, after

receiving notice from a consumer reporting agency that a consumer disputes information that is

being reported by that furnisher, conduct a reasonable investigation with respect to the disputed

information, to review all relevant information, to report the results of the investigation to the

consumer reporting agency, and, if the investigation reveals that the information is incomplete or

inaccurate, to report those results to all other consumer reporting agencies to which the furnisher

has provided the inaccurate information.

47.     From at or before June of 2020 until the present, Defendant Hunter Warfield has

consistently provided inaccurate information about Plaintiffs to Defendants Experian,

TransUnion, and Equifax.

48.     Plaintiffs disputed the inaccurate information with each Defendant CRA.

49.     Pursuant to the FCRA, Defendant CRAs each sent Plaintiff' disputes to the

furnisher of the false information: Defendant Hunter Warfield.

50.     Even after Plaintiff's dispute, which attached Plaintiffs' e-mail correspondence

with Defendant Sage and a copy of the check paying everything requested of them, Defendant

Hunter Warfield continued to report the inaccurate rent delinquency on Plaintiffs' credit reports.

51.     15 U.S.C. § 1681s-2 prohibits furnishers from reporting inaccurate information, and sets forth the furnisher's duty to investigate the completeness and accuracy of the information reported when the furnisher receives a dispute from a consumer.

52.     After receiving notice by Defendants Experian, Equifax, and TransUnion, as required by the FCRA, Defendant Hunter Warfield engaged in conduct that violates 15 USC § 1681s-2(a), (b), by:

a.      Willfully failing to conduct an investigation of the inaccurate information that Plaintiffs disputed;

b.      Willfully failing to report the results of investigations to Defendants Experian, TransUnion, and Equifax;

c.      Willfully failing to report an accurate status of the inaccurate information to Defendants Experian, TransUnion, and Equifax;

d.      Willfully failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiffs;

e.      Willfully continuing to furnish and disseminate inaccurate and derogatory credit, account and other information concerning Plaintiffs to Defendants Experian, Equifax and TransUnion; and

f.      Willfully failing to comply with the requirements imposed on furnishers of information pursuant to 15 USC § 1681s-2(a), (b).

53.     In the alternative, the above-described violations were negligent.

54.     Defendant Hunter Warfield's conduct was a direct and proximate cause, as well as a substantial factor, in causing serious injuries, damages and harm to Plaintiffs that are described above.

### COUNT FOUR – Violation of the Fair Credit Reporting Act – Failure to Investigate
### (Defendants Experian, Equifax and TransUnion)

55.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

56.     The FCRA provides that if the completeness or accuracy of any item of information contained in a consumer's file at a CRA is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, or delete the item from the file within 30 days of receiving the consumer's dispute notice. 15 U.S.C. § 1681i(a)(2)(A).

57.     The FCRA further requires the CRA, within 5 business days of receiving notice of the consumer's dispute, to provide notification of the dispute to the person who furnished the information in dispute and requires the CRA to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A). In conducting its reinvestigation of disputed information in a consumer report, the CRA is required to "review and consider all relevant information submitted by the consumer." *Id.*

58.     Defendants Experian, TransUnion, and Equifax failed to conduct a reasonable reinvestigation of the inaccuracies that the Plaintiffs disputed.

59.     Defendants Experian, TransUnion, and Equifax failed to review and consider all relevant information submitted by Plaintiffs.

60.     As a direct and proximate result of the above-described violations of § 1681i of the FCRA, Plaintiffs have sustained damages.

## COUNT FIVE – Violation of the Fair Credit Reporting Act – Failure to Maintain Reasonable Procedures
### (Defendants Experian, Equifax and TransUnion Only)

61.     Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

62.     Despite receiving complaints and disputes from Plaintiff, Defendant CRAs have failed to correct the disputed erroneous information.

63.     Defendants Experian, TransUnion, and Equifax failed to employ and follow reasonable procedures to assure maximum possible accuracy of Plaintiffs' credit reports, information, and file, in violation of 15 USC § 1681e(b). The basis of this allegation is the fact that Plaintiffs gave Defendant CRAs definitive proof of the status of the account, yet Defendant CRAs continued to report the false debt.

64.     As a direct and proximate result of the above-described violations of § 1681e(b) of the FCRA, Plaintiffs have sustained damages.

### CONCLUSION

WHEREFORE, Plaintiff prays that this Court:

A) Find in favor of Plaintiff in counts 1–5;
B) Award an amount of actual damages for each claim to be determined by a jury;
C) Award punitive damages at an amount to be determined by a jury for willful violations of the FCRA against Defendant CRAs and Defendant Hunter Warfield; and
D) Award attorney's fees and costs pursuant to the fee-shirting statutes in counts 2-5.

Respectfully Submitted,

/s/ Ingmar Goldson
Ingmar Goldson, Esq.

13

(D. Md. Bar No. 19024)
The Goldson Law Office
1 Research Court, Suite 450
Rockville, MD 20850
Phone: 240-780-8829
igoldson@goldsonlawoffice.com


/s/ Joseph Mack
Joseph Mack
(D. Md. Bar No. 29021)
The Law Offices of Joseph S. Mack
PO Box 65066
Baltimore, MD 21209
Tel.    (443) 423-0464
joseph@macklawonline.com


Attorneys for Plaintiff Shirl Young



## JURY DEMAND


Plaintiff hereby demands a trial by jury on all issues so triable



/s/

Ingmar Goldson, Esq.